Frank R. DEL PIANO, Appellant,

v.

UNITED STATES of America.

No. 77–2064.

United States Court of Appeals,
Third Circuit.

Argued March 31, 1978.

Decided April 26, 1978.

Fern H. Schwaber, Asst. Defender, Defender Ass'n of Phila. Federal Division, Philadelphia, Pa., for appellant.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Division, James D. Coleman, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question for decision is whether a prisoner is entitled to a *de novo* sentencing proceeding before a judge entertaining a motion pursuant to 28 U.S.C. § 2255,[1] under

_____

1. 28 U.S.C. § 2255 provides in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming

the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or

circumstances in which the original sentencing judge has died and the petitioner has established that his sentence was imposed in violation of the rule of *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). *Tucker* held that prior convictions obtained without the assistance of defense counsel as mandated by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could not be considered by the sentencing judge. The basis of that decision, also rendered in the context of a § 2255 motion, was Tucker's contention that his sentencing process had been tainted because the court considered prior felony convictions obtained in proceedings in which he was not represented by counsel.

In considering appellant Frank Del Piano's motion, the district court in the present action recognized that the infirmities of the original sentencing procedures had been correctly identified and properly analyzed in a magistrate's report to the court. Nevertheless, the magistrate's recommendation that a new hearing was mandated was specifically rejected, the court ruling instead that "a resentencing of petitioner is unnecessary since, after consideration and review of the entire record without regard to the juvenile adjudications, the Court finds that the original sentence would still be appropriate." (A–4). Because we determine that the district court erred and that a *de novo* sentencing is required, we reverse.

### I.

The underlying historical or narrative facts are not in dispute. As reported by the magistrate, Del Piano entered a plea of guilty to a charge of armed bank robbery in 1963 and was subsequently sentenced by Judge Harold K. Wood, now deceased, to terms amounting to twenty-five (25) years, to run consecutively to a term of imprisonment he was then serving in a state penitentiary. Prior to imposing sentence (separate consecutive terms of 5 years for con-

spiracy and 20 years for the actual bank robbery), Judge Wood was furnished a presentence report prepared by the United States Probation Office in which six distinct juvenile adjudications of delinquency were recited. It is conceded that Del Piano was not represented by counsel at the juvenile proceedings, and that those proceedings are thus constitutionally invalid. *See In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

### II.

■ It is settled that a federal trial judge is vested with wide discretion in imposing a sentence within the statutory limits prescribed for a given offense. Under ordinary circumstances the exercise of that discretion is not subject to attack by review or collateral proceedings. It is critical, however, that this be a properly informed exercise, not one influenced by "misinformation of constitutional magnitude". *United States v. Tucker, supra,* 404 U.S. at 447, 92 S.Ct. 589. Upon proof that improper data were considered by the sentencing court, the sentencing process may be reexamined, the sentence vacated, and a new sentencing ordered. When this occurs, it is not the *product* of the sentencing court's discretion that is reviewed, *i. e.,* the sentence, but the procedures inherent in the *exercise* of that discretion.

Thus, while paying fealty to the precepts that a federal trial judge has wide discretion in determining what sentence to impose, and that before making that determination "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come", *id.* at 446, 92 S.Ct. at 591, the Supreme Court specifically teaches that "[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person . . . to . . . enhance punishment for another offense . . . is to erode the principle of that case.

that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or

is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that . . . right." *Loper v. Beto,* 405 U.S. 473, 481, 92 S.Ct. 1014, 1018, 31 L.Ed.2d 374 (1972), *quoting Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). *See United States ex rel. Fletcher v. Walters,* 526 F.2d 359, 361 (3d Cir. 1975); *United States v. Radowitz,* 507 F.2d 109, 112 (3d Cir. 1974).

The government does not quarrel with either the choice or the interpretation of these controlling legal precepts. Rather, its argument is confined to the application of these precepts to the facts at hand.[2] It presents alternate arguments: first, there is no proof that the sentencing court actually considered the juvenile adjudications, and second, even if the sentencing court did consider them, the court conducting a collateral review could reconsider the record exclusive of the juvenile adjudications without the necessity of vacating the sentence and sentencing anew. We disagree with both contentions.

#### A.

Whether Judge Wood considered the juvenile adjudications in his sentencing determination is a question of fact. In their treatment of this question, the magistrate expressly noted, and the district court noted by adoption of the magistrate's findings, the following statement of Judge Wood at sentencing:

> The Court: Well, you both have long undesirable records, continuous violence of every shape and form. Society has to be protected from you. I don't like to hand out long sentences but there comes a time when the public comes first. I think this is one of

them. Both of you are involved in robberies at the point of a gun within a period of a month. Prior to that you were involved in almost continuous violations of the law.

(Transcript of sentencing at A–17; Magistrate's Report-Recommendations at A–10(b); district court Order at A–10, Opinion at A–4). The magistrate found, primarily on the basis of this statement, that the convictions were considered: "it is logical to assume that specific consideration was given to the entire record including the invalid juvenile convictions." (A–8). The district court, if somewhat unenthusiastically, concurred in this finding: "the Court agrees with the United States Magistrate that '[Judge Wood] could well have considered the juvenile record . . . prior to imposing sentence.'" (A–4).

On review of the district court's order, this court must evaluate these findings of narrative or historical fact by the clearly erroneous standard, rejecting them only if they are found to be "completely devoid of minimum evidentiary support displaying some hue of credibility or [to bear] no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan,* 465 F.2d 1298, 1302 (3d Cir.1972). *See SmithKline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056 (3d Cir.1978); *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 887 (3rd Cir. 1975); Fed.R. Civ.P. 52(a). Measured against this standard, the finding below that the sentencing judge considered the appellant's prior, constitutionally invalid convictions in imposing sentence will not be disturbed. Accordingly we are confronted with a case in which the *Tucker* rule applies and thus relief under § 2255 is appropriate.

#### B.

The government contends, and the district court agreed, that a new sentencing

2. Supposing the facts to have been ascertained, decision of a controversy according to law involves (1) selection of the legal material on which to ground the decision, or as we commonly say, finding the law; (2) development of the grounds of decision from the material selected or interpretation in the stricter sense of that term; (3) application of the abstract grounds of decision to the facts of the case.

The first may consist merely in laying hold of a prescribed text of code or statute, or of a definite, prescribed, traditional rule; in which case it remains only to determine the meaning of the legal precept, with reference to the state of facts in hand, and to apply it to those facts. Pound, *The Theory of Judicial Decision,* 36 Harv.L.Rev. 940, 945–46 (1926).

hearing was not necessary, that the § 2255 court had the power to review a record from which the prior tainted convictions had been expurgated and then to decide whether the original sentence should be altered. We disagree. We perceive a fundamental distinction between the situation in which the judge conducting the § 2255 proceeding is the original sentencing judge and that in which two different judges perform these functions.

When the judge is the same, the necessity for a new hearing may be obviated because the general requirement of Fed.R.Crim.P. 43(a), that a "defendant shall be present at . . . the imposition of sentence," has already been satisfied. See Fed.R.Crim.P. 32. The defendant has been afforded the opportunity of being present at his sentencing and has been afforded as well the common law right of allocution, see *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), before the judge who makes the ultimate decision. See *generally United States v. Radowitz, supra; United States v. Janiec,* 464 F.2d 126 (3d Cir. 1972); *Jenkins v. United States,* 363 F.Supp. 848 (N.D.Tex.1973), *aff'd* 488 F.2d 1406 (5th Cir. 1974); *McAnulty v. United States,* 341 F.Supp. 927 (E.D.Mo.1972), *aff'd* 469 F.2d 254 (8th Cir. 1972), *cert. denied,* 411 U.S. 949, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973); *cf. Lipscomb v. Clark,* 468 F.2d 1321 (5th Cir. 1972). Thus, the prisoner has had at least one "eyeball-to-eyeball" confrontation with the judge who later examines the sentencing record and exercises an informed discretion, without relying upon "misinformation of constitutional magnitude". *Tucker, supra,* 404 U.S. at 447, 92 S.Ct. 589.

Where the judge who exercises this discretion in a later § 2255 proceeding has literally never laid eyes on the prisoner, however, the second sentencing process lacks two critical ingredients. First, it deprives the prisoner of the common law right of allocution. "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed requires reversal." *Green v. United States, supra,* 365 U.S. at 304, 81 S.Ct. at 655. Second, and equally important, it deprives the judge of the opportunity to evaluate the total person who stands at the bar of justice: to note the physical appearance and demeanor; the tone, temper and rhythm of speech; the facial expressions, the hands, the revealing look into the eyes. In sum, it deprives the judge of those impressions gleaned through the senses in any personal confrontation in which one attempts to assess the credibility or to evaluate the true moral fiber of another.

Wide discretion is vested in the sentencing judge because of what is called "the superiority of his nether position."[3] This is so not because the district judge knows more than his appellate brothers, but rather, as Professor Maurice Rosenberg reminds us, "he sees more and senses more."[4] When the judge who has examined the redacted record has never had the opportunity to see and to sense, then the very reason for vesting so much discretion in him is no longer present. Lacking its reason, the rule should not apply. For "the rule follows where its reason leads; where the reason stops, there stops the rule."[5]

### III.

Another consideration compels the conclusion we reach here, a consideration that goes to the basic tenets of judicial review. To permit one district judge in a § 2255 proceeding to evaluate the sentencing record of another district judge is to permit judicial review of a district court order by a single judge. This is precisely what the district court did in its order below: "After a review of the entire record in Criminal Number 21591 without consideration of the juvenile adjudications challenged in this

---

**3.** Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L.Rev. 635, 663 (1971).

**4.** *Id.*

**5.** K. Llewellyn, *The Bramble Bush* 157–58 (1960).

motion, the Court finds that the sentence imposed by Honorable Harold K. Wood on January 27, 1964 would still be appropriate." (A–10). Under the federal statutory schema, one member of a trial court does not possess the power to review *judicially* the determination of a judge of the same court. *Cf. National Council v. Robertson,* 214 Pa.Super. 9, 248 A.2d 861, 864 (1964). Judicial review of a trial court's decision can only be conducted by members of a multi-judge appellate court. *See generally* C. Wright, Law of Federal Courts 3–10 (3d ed. 1976).

In those instances in which we have permitted a § 2255 judge to examine his or her original sentencing record and to make a fresh decision without a hearing, jurisprudentially speaking, we are not permitting that district judge to make a *judicial* review of the previous sentencing decision. In permitting the judge to "review" the prior file, we are simply allowing him or her to examine the record. The new sentence imposed, even if congruent with the original sentence in all respects, is nevertheless a *new* sentence. What has occurred is a *factual* review, *i. e.,* an examination of the record, not a *judicial* review of a previous decision. Similarly, in any § 2255 proceeding, the district court generally "reviews" the record of the original case before him or her, but makes a new and independent judicial decision in the motion "to vacate, set aside, or correct the sentence."

### IV.

The judgment of the district court denying relief will be reversed and the proceedings remanded to the district court with a direction to vacate the original sentences of the appellant Frank R. Del Piano at Criminal No. 21591 and to set a *de novo* sentencing hearing at which sentence is to be imposed without consideration of constitutionally invalid prior convictions.